W. H. CORREY, Appellee, v. INTER-URBAN RAILWAY COMPANY, Appellant.

TRIAL: Conduct of Counsel—Persistent Offer of Rejected Testi-1 mony—New Trial.    Counsel has the right to persist in the

good-faith offer of rejected testimony until he has made a fair record of the fact which he desires to prove.

**NEW TRIAL:** Grounds—Newly Discovered Evidence on Noncontested Issue. Newly discovered evidence on a noncontested issue is no ground for a new trial.

*Appeal from Perry Superior Court.*—WALTER CARDELL, Judge.

THURSDAY, OCTOBER 25, 1917.

ACTION to recover double damages for the killing of plaintiff's horse upon the defendant's track, the said horse having escaped from a pasture, as alleged, to the defendant's right of way, through a fence which it was the duty of the defendant to maintain. The principal defense was concentrated on the question that the horse did not escape upon the right of way through the alleged defective fence, but that the horse was unlawfully running at large upon the defendant's right of way at a place where the defendant had no lawful right to fence, because the same was within the town plat of the town of Perry. There was a trial to a jury and a verdict for the defendant. A new trial was granted upon motion of the plaintiff. From such order granting a new trial, the defendant has appealed.—*Reversed and remanded.*

*William H. McHenry,* for appellant.

*Dugan & Dugan, Giddings & Blake* and *Thomas M. Tiernan,* for appellee.

EVANS, J.—Two grounds were specified in the motion for a new trial. The motion was sustained generally. We have to consider whether the motion could fairly be sustained upon either ground.

1. TRIAL: conduct of counsel: persistent offer of rejected testimony: new trial.

The first ground was the alleged mis-

conduct of counsel for the defendant upon the trial, in that he made persistent offers of a certain kind of evidence after adverse rulings by the court. It appears from the record that the horse had at times been kept in a pasture adjoining the defendant's right of way on the west side. The horse was injured some time during the night of September 24, 1914. It was the contention of the plaintiff that he put the horse in this pasture in the early evening of such night, and that he was found the next morning on· the defendant's right of way, lying dead within a few feet of the rails, and having a broken leg. The place on the right of way was a few hundred feet north of the pasture in question. The defendant undertook to prove by certain witnesses that the horse in question, with others, broke out of the pasture in the early evening before, and went first into the pasture of Mowrer, and afterwards left such pasture and was running at large, and that they were driven in the direction of the home of the plaintiff, which was some distance away from the pasture in question. This testimony was all rejected by the court. The complaint is that the defendant's counsel was guilty of misconduct in making repeated offers of this testimony after an adverse ruling by the court. The following examination of the witness Mullen furnishes the principal basis for this complaint.

"Q. Now on the evening before the time that you learned of his horse being found up there by Pattee Park, state what happened there in that pasture and on your lands, and what experience you had with Mr. Correy's horse? (Mr. Blake: Objected to as incompetent, irrelevant, and immaterial, not definitely bearing on any issue. Court: Sustained. Exception saved.) Q. The night before you heard of this horse being found dead up by ·the Pattee Park, did all of the horses that were in this pasture used· by Mr. Correy leave the pasture and get into your fields? (Mr. Blake:

Objected to as incompetent, irrelevant and immaterial, not definitely bearing upon any question in issue. Witness hasn't shown himself competent to testify as to any horses that were in Mr. Correy's field on any night. Court: Objection sustained. Exception saved.) Q. The night before the morning that you learned of this horse being found near the Pattee Park, what is the fact as to whether or not there were or had been any horses in the Creek pasture known as the Correy pasture? (Mr. Blake: Objected to as incompetent, irrelevant and immaterial, not shown to refer to any horse in particular or the one claimed to have been killed. Court: State what you know about the horses in there. Exception saved.) A. I was over at the Correy pasture between 6:30 and 7:00 P. M. I was over there thirty minutes, and there was no horses in the Correy pasture at all. Q. Where were the horses? (Mr. Blake: Objected to as incompetent, irrelevant and immaterial. Court: Sustained. Exception saved.) Q. Were the horses in your field? (Mr. Blake: Same objection—not showing that there were any horses yet. Court: Sustained. Exception saved.) Q. Did you see any of Correy's horses there when you went to his pasture? Did you find any of Correy's horses in the vicinity of this pasture? A. Yes, sir. Q. Where were they? A. On the hay land owned by W. P. Mowrer. Q. Where is that hay land with reference to the Correy pasture? A. Adjoins it on the south. Q. How many head of horses belonging to Correy did you find in this pasture? (Mr. Blake: Objected to as incompetent, irrelevant and immaterial. Court: Sustained. Exception saved.) Q. You say when you visited that pasture about 6:30 or 7:00 there were no horses in the Correy pasture? (Mr. Blake: Objected to as a repetition. Court: Sustained. Exception saved.) Q. When you found these horses in the hay land that you have described, what did you do with them? (Mr.

Blake:    Objected to as incompetent, irrelevant and im-
material.   It makes no difference as to what the witness did
with any of Correy's horses excepting a certain horse.
Court:   Sustained.   Exception saved.)   Q.   Did you drive
those horses out of your hay field?   (Mr. Blake: Objected
to as incompetent, irrelevant and immaterial.   Court:   Ob-
jection sustained.   Exception saved.)   Q.   Where did you
drive them?   (Mr. Blake:   Same objection as last made.
Court:   Sustained.   Exception saved.)   Q.   What is the
fact, Mr. Mullen, as to whether or not you or someone else,
if there were someone else, drove all of those horses of
Correy's that were in your hay field found there that night,
if you didn't drive them down to the southwest and put
them out upon the public road?   (Mr. Blake:   Same ob-
jection, and the further objection that counsel is attempting
to testify and to put matters before the jury by the use of
incompetent, irrelevant and immaterial questions that
should not go before them.   Court:   Sustained.   Exception
saved.)"

Defendant's counsel was entitled to make a fair record
of what he was offering to prove. It is manifest that the first
few questions to which objections were sustained did not
sufficiently disclose what the defendant proposed to prove.
Further examination was necessary for that purpose.   The
court could have required the defendant to make his offer
in the absence of the jury, if the making of the record in
the presence of the jury was deemed prejudicial. No sugges-
tion of this kind was made by the court or either counsel.
The method adopted was quite the usual one, and we see no
ground for characterizing the action of counsel as miscon-
duct.   We feel constrained to say also that the evidence
offered was admissible, and ought to have been received.   It
clearly tended to negative the contention that the horse
came from the pasture through the alleged defective fence.

This furnishes a further reason why we should be slow to hold the offer of the evidence as prejudicial to the plaintiff or as misconduct on the part of the defendant. We hold, therefore, that a new trial could not properly be granted upon this ground.

2. NEW TRIAL: grounds: newly discovered evidence on non-contested issue.

The further question remains whether the motion was properly sustained on the ground of newly discovered evidence. The newly discovered evidence was that of the witness Fiscel, who was a passenger upon the interurban train which was supposed to have struck the plaintiff's horse. Fiscel's affidavit discloses that, while riding within the city of Perry, he felt a distinct shock; that soon thereafter, the train having been stopped, he walked back and found the horse in question within a few feet of the rails, suffering from a broken leg. The circumstance thus offered to be proved was, of course, very persuasive, as tending strongly to prove that the injury of the horse resulted from a collision with the train. The defendant contends, however, that the evidence was cumulative only, in that such fact was not contested at all upon the trial. The circumstances relied on at the trial were that the horse was found lying on the right of way, within a few feet of the defendant's rails, and having a broken leg. It is true that the defendant's answer contained a general denial. It pleaded affirmatively, however, "that the horse in question was unlawfully at large and unlawfully on the defendant's road at the time of the accident in question," and "that the said horse was a trespasser on the road of this defendant at the time of the accident in question." The defendant offered no testimony on the trial in question tending in any manner to deny the fact that the injury was caused by a collision with defendant's train. At the close of the evidence, the defendant moved for a directed

verdict upon ten specific grounds. None of these grounds indicated any claim of defendant that the injury was not shown to be caused by the defendant's train. The evidence on behalf of plaintiff that the injury was thus caused was circumstantial wholly, but very persuasive. If Fiscel's evidence had been received, it, too, was only circumstantial. The only questions which were really contested at the trial were: (1) Whether the railroad company had a right to fence at the place where it was claimed the horse escaped from the pasture; (2) whether the horse did escape from the pasture through that particular fence; (3) whether that fence was in fact defective; (4) the value of the horse.

We think it must be said that the proposed evidence of Fiscel was cumulative only, and that it went only to a formal issue, which was not actually contested at the trial. We reach the conclusion, therefore, that the motion for a new trial was erroneously sustained on either or both grounds.

The order granting a new trial must be reversed, and the cause remanded for a judgment on the verdict.—*Reversed and remanded.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.